NEIL, APPELLANT, v. JACKSON, APPELLEE.

(No. 5559—Decided July 25, 1957.)

*Messrs. Barkan, Reeves & Crites* and *Mr. Robert L. Herron,* for appellant.
*Messrs. Mayer & Leshy,* for appellee.

*Per Curiam.* This case is now before us as an appeal on questions of law. The appeal on questions of law and fact has heretofore been dismissed, and the case was retained for determination on questions of law only.

The case was tried in the Court of Common Pleas before a judge and jury. The defendant, at the end of the plaintiff's evidence, moved for an order directing the jury to return a verdict in favor of the defendant. The judge of the Common Pleas Court sustained that motion, and the jury returned a verdict for the defendant upon the specific instructions of the court.

There was one assignment of error made by the plaintiff, appellant herein, which is as follows:

1. The court erred in sustaining defendant's motion for a directed verdict in favor of defendant and against the plaintiff at the close of plaintiff's case, in that the directed verdict is against the weight of the evidence and contrary to law.

The plaintiff says that on or about August 15, 1953, he was a tenant in the home of the defendant; that on that date the de-

fendant lighted certain sulphur candles in the premises while he, the plaintiff, to the knowledge of the defendant, was asleep in the upstairs portion of the premises; that such candles are used for purposes of extermination and are harmful to human beings if the fumes therefrom are inhaled by human beings; that as a result of the acts of the defendant, plaintiff suffered near asphyxiation, was greatly frightened, his nervous system was seriously shocked, and he was rendered very ill; that he has not completely recovered and is still suffering nasal and respiratory irritation; and that the injuries were the direct and proximate result of the conduct of the defendant in lighting the candles while plaintiff was asleep in the premises.

The original petition contained the words, "wilful and intentional"; but, before the verdict was rendered and before the case was finally concluded, plaintiff was granted leave to amend to strike out the words, "wilful and intentional," leaving the claims of the plaintiff essentially as they have been set forth herein.

The defendant admitted that on August 15, 1953, the plaintiff was renting a room at defendant's residence, but he denied, among other things, that he knew the plaintiff was asleep at the time in the residence. Defendant denied further that the plaintiff was injured or damaged as alleged in his petition or in any other manner from the candles, and his answer concluded with a general denial.

There is no dispute that the plaintiff, Neil, had lived in the defendant's home at 374 South Highland Avenue for about five years prior to this occurrence, and that he had paid rent and occupied one room and had a key for the house, which he still had in his possession on the day of this occurrence.

The plaintiff testified as follows:

"Q. Now, on August 15, 1953, do you recall approximately what time you arrived home? A. Well, it was around about, around 9:00 o'clock.

"Q. Do you remember which door you came in, Mr. Neil? A. I came in through the kitchen door, only door I had a key to.

"Q. And as you came in through the kitchen, did you see anybody in the kitchen? A. Mr. Jackson's mother was sitting at the north end of the table, and he was at the south end of the

table, and they both was over like this (indicating), talking, when I came in, and I said, 'Good-evening,' and Mr. Jackson's mother, she said, 'Good-evening, Mr. Neil,' so I went on up to my room.

"Q. But you did see Mr. Jackson and his mother in the kitchen? A. Yes, sir."

The defendant testified that he arrived home about eight o'clock on the night in question; that his wife and children were not at home because they had already left for Pennsylvania; and that he began to get ready to leave himself that night. Defendant testified further as follows:

"Q. And approximately what time did you finish packing? A. Oh, I guess it must have been about probably 9:30.

"Q. And after you finished packing, what did you do? A. Well, I ate supper.

"Q. You ate your supper? A. Yes.

"Q. Your mother cook it for you? A. She did.

"Q. You and your mother were in the kitchen after you had finished packing? A. That's right.

"Q. And about how long did it take you to eat your supper? A. Well, I imagine about fifteen minutes.

"Q. I assume you and your mother did the dishes, cleaned the kitchen up, is that correct? A. Well, after she fixed my supper, she left.

"Q. Now, as you were home there on the evening or night, evening of August 15th, did the plaintiff, Mr. Neil, come into your home, come home, that is? A. My mother said he came in, but I didn't see him myself."

The rest of the evidence deals with the fact that the defendant got ready to leave about one a. m. and lighted three sulphur candles in the house just as he left; that defendant did not look into the room where the plaintiff was asleep; that the plaintiff woke up subsequently and had a difficult time, according to his testimony, getting to the door; that plaintiff spent the rest of the night at a neighbor's house; that the neighbor called the fire department; that the fireman, Marion Henry, testified that he was at the premises of the defendant; and that the fireman gave some testimony to the effect that sulphur fumes were harmful and that he used a mask to enter the house on the date in question.

Plaintiff's doctor testified that plaintiff's throat and eyes were red when he examined him the following day, Monday, the occurrence having taken place after midnight and on Sunday morning, August 16. The doctor was not too positive as to the number of times he treated the plaintiff, but he testified that, subsequently, plaintiff's eyes cleared up and that he appeared to be better. The doctor had known the defendant prior to this occasion and has seen him since the occurrence.

The plaintiff testified at some length about his symptoms and his condition.

It is our opinion that, based upon the record and, specifically, the conflict of evidence by the plaintiff and the defendant with reference to the defendant's knowledge that plaintiff was in the house at the time defendant lighted the candles and left the house, this case should, in all fairness, have been submitted to a jury, and that the plaintiff's injuries were sufficient to allow a jury to determine the extent of his right to a recovery. Therefore, we conclude that it was error for the court to take the case from the jury under the record in this case.

The judgment is, therefore, reversed and the cause remanded to the trial court for a new trial.

*Judgment reversed.*

PETREE, P. J., BRYANT and MILLER, JJ., concur.